Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| AMADO CARRASQUILLO AGOSTO Y OTROS<br><br>**APELANTES**<br><br>v<br><br>WALMART PUERTO RICO, INC.<br><br>**APELADA** | KLAN202401056 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. FPE2017-0467<br><br>Sobre: Despido Injustificado Ley Núm. 80 del 30 de mayo de 1976 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de febrero de 2025.

### I.

El 26 de noviembre de 2024, el señor Amado Carrasquillo Agosto y un grupo de veinticinco (25) exempleados de Sam's Club[1] (en conjunto, apelantes) presentaron una *Apelación* en la que solicitaron que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro primario) el 24 de octubre de 2024, notificada y archivada en autos el 28 de octubre de 2024.[2] En el dictamen, el TPI declaró Ha Lugar una *Moción de sentencia sumaria* promovida por Walmart Puerto Rico, Inc. (Walmart o parte apelada) y, en consecuencia, desestimó con

---

[1] El grupo de exempleados está compuesto por el señor Amado Carrasquillo Agosto, Amado Casillas Estrada, Ana Luisa Del Valle, Ángel Alberto Sosa Flores, Angie Nett Rivera Vázquez, Arleen Batista Rivera, Edgar López Diaz, Félix Alberto López Danet, Gloriana Isabel Pérez Vega, José Alberto Hernández Cartagena, José Torrens Mercado, Laura Rosado Tirado, Leslie Ann Castillo Algarín, Leticia Encamación Hiraldo, Luz Eneida Santana Rodríguez, Magaly Nieves Ramírez, María del Carmen Gontán Meléndez, Marie C. Márquez Arana, Nilda Iris Santiago Peraza, Oscar Luis Látimer Negrón, Richard Fontánez Acevedo, Rosa María Mercado López, Sheila Ruby Flores, Vilma Colon García, Xiomara Auli Rodríguez y Zuneida González García.
[2] Apéndice de la *Apelación*, Anejo 1, págs. 1-30.

perjuicio una *Demanda* sobre despido injustificado, impulsada por los apelantes.

El 5 de diciembre de 2024, emitimos una *Resolución* en la que le concedimos a la parte apelada hasta el 26 de diciembre de 2024 para presentar su alegato en oposición a la *Apelación*.

El 26 de diciembre de 2024, Walmart presentó un *Alegato en oposición a apelación* en el que solicitó que confirmemos la *Sentencia* apelada.

También, radicó una *Moción sometiendo en sobre sellado documentos que forman parte del apéndice al alegato en oposición a apelación* en la que presentó, en un sobre sellado, dos (2) anejos del Apéndice del *Alegato en oposición a apelación*, los cuales según indicó eran confidenciales.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionada la *Apelación* de epígrafe y, en adelante, pormenorizamos los hechos procesales relevantes a su atención.

**II.**

El caso de marras tiene su génesis el 20 de diciembre de 2017 cuando los apelantes presentaron una *Querella* en contra de Walmart por alegado despido injustificado, al amparo de la *Ley sobre despidos injustificados*, Ley Núm. 80 de 1976, según enmendada, 29 LPRA secs. 185a *et seq.*, (Ley Núm. 80-1976), y discrimen por edad, bajo el palio de la *Ley antidiscrimen de Puerto Rico*, Ley Núm. 100 de 1959, según enmendada, 29 LPRA secs. 146 *et seq.*, (Ley Núm. 100-1959). Originalmente, la reclamación se instó en virtud del procedimiento sumario dispuesto en la *Ley de procedimiento sumario de reclamaciones laborales*, Ley Núm. 2 de 1961, según enmendada, 32 LPRA secs. 3118 *et seq.*, (Ley Núm. 2-1961), posteriormente el trámite fue variado al procedimiento ordinario.

En síntesis, los apelantes alegaron que el 13 de octubre de 2017 fueron despedidos injustificadamente por su patrono,

Walmart, de los empleos que ostentaban en la tienda Sam's Club, ubicada en Los Colobos, Carolina (Sam's Club Colobos).[3] Según plantearon, si Walmart necesitaba reestructurar la compañía, pudo evitar los despidos reubicando a los empleados en otras áreas o puestos de otras tiendas de la compañía. No obstante, arguyeron, optó por únicamente indicarles que solicitaran a puestos vacantes dentro de la empresa sin respetar su antigüedad, cuando el tiempo de empleo de los apelantes oscilaba entre tres (3) y veinticinco (25) años.

Entretanto, diecinueve (19) de ellos argumentaron que se les discriminó por su edad, puesto que, a grandes rasgos, Walmart implementó un plan de despido discriminatorio por edad. Al respecto, alegaron que la parte apelada les excluyó de realizar sus funciones en otras tiendas y los reemplazó con personas más jóvenes, quienes realizaban las mismas funciones dentro de la misma clasificación ocupacional.

Por todo ello, solicitaron el pago de una suma total de $590,211.63 por concepto de la Ley Núm. 80-1976, *supra*. Por su parte, aquellos que alegaron discrimen por edad reclamaron el pago de un monto total de $1,180,423.26 por concepto de la Ley Núm. 100-1961, *supra*, y una suma por concepto de honorarios de abogado.

El 29 de diciembre de 2017, Walmart radicó una *Contestación a la querella* en la que solicitó que se declarara Sin Lugar la *Querella*.[4] En esencia, negó las bases de las causas de acción reclamadas, planteando que los apelantes fueron despedidos por justa causa y no fueron discriminados de forma alguna. Según explicó, el cierre total del establecimiento constituyó justa causa

---

[3] El último día de trabajo de los exempleados fue el 19 de julio de 2017, día en que Walmart efectuó el cierre total y permanente de la tienda.
[4] Apéndice de la *Apelación*, Anejo 4, págs. 56-96.

bajo la Ley Núm. 80-1976, *supra,* para el despido de todos los empleados que laboraban en él.

Luego de múltiples trámites procesales, los cuales incluyeron la desestimación con perjuicio de la causa de acción sobre discrimen por edad[5], y culminado el descubrimiento de prueba, el 24 de septiembre de 2021, Walmart presentó una *Moción de sentencia sumaria* en la que solicitó al TPI que desestimara con perjuicio la *Querella.*[6] Según planteó, los apelantes carecían de una causa de acción por despido injustificado y no podrían prevalecer en el juicio, así se interpretaran a favor de estos las alegaciones y los documentos descubiertos por las partes. A esos efectos, propuso setenta y dos (72) hechos que no estaban en controversia y sometió treinta y ocho (38) anejos para sustentarlos. En esencia, adujo lo siguiente:

(1) Walmart operaba Sam's Club Colobos de forma independiente en cuanto al personal, adjudicándole su propio *staff* gerencial. Ese staff tenía a su cargo la supervisión diaria de la tienda.[7]

(2) Walmart no tiene una práctica indiscriminada de trasladar asociados de una tienda a otra; para ello, posee una *Política de transferencias y publicación de puestos,* la cual establece que, para que haya una transferencia de un asociado a otra tienda, debe existir una vacante, debe ser solicitado por el empleado, debe cumplir con los requisitos establecidos, tiene que pasar un proceso de entrevista, tiene que ser escogido, tiene que hacérsele una oferta y este la tiene que aceptar.[8]

(3) A manera de excepción, un asociado puede ser asignado a alguna tienda para suplir alguna necesidad temporera sin que ello constituya una transferencia de personal. Tal era el caso de las personas que ocupaban el puesto de "Líder de equipo de UPC", quienes realizaban tareas de auditoría que podían incluir visitas a otras localidades de Sam's Club.[9]

---

[5] Apéndice del *Alegato en oposición a apelación,* págs. 4-13. Véase la *Sentencia Parcial* emitida por el TPI el 24 de octubre de 2019, notificada y archivada en autos el 28 de octubre de 2019, fecha que surge de la página cibernética del Poder Judicial, https://poderjudicial.pr/index.php/consulta-de-casos/ para el caso F PE2017-0467. Tomamos conocimiento judicial de ello al amparo de la Regla 201 de Evidencia, 32 LPRA Ap. IV, R. 201. Este dictamen advino final, firme e inapelable.

[6] Apéndice de la *Apelación,* Anejo 5, págs. 97-482.

[7] Íd., pág. 100. Véanse los hechos propuestos como incontrovertidos Núm. 2-3.

[8] Íd., págs. 100-102. Véanse los hechos propuestos como incontrovertidos Núm. 4-8.

[9] Íd., pág. 102. Véanse los hechos propuestos como incontrovertidos Núm. 9-10.

(4) Walmart tomó la decisión de cerrar total y permanentemente las operaciones de Sam's Club Colobos porque las ventas y la membresía de la localidad no crecieron a tenor con las expectativas.[10]

(5) El 19 de julio de 2017, Walmart le comunicó el cierre total y permanente de Sam's Club Colobos a todos los apelantes, quienes laboraban en la tienda desempeñándose en distintas posiciones.[11] A partir de esa fecha, Sam's Club Colobos nunca reanudó operaciones.[12]

(6) Originalmente, la fecha de terminación sería el 29 de septiembre de 2017, pero Walmart extendió la fecha hasta el 13 de octubre de 2017 tras el paso del Huracán María el 20 de septiembre de 2017.[13]

(7) Todas las clasificaciones ocupacionales existentes en Sam's Club Colobos fueron eliminadas porque todos los empleados cesaron funciones a causa del cierre total y permanente de la tienda.[14]

Asimismo, esbozó la fecha en que cada apelante comenzó a laborar para Walmart, así como la última posición que ocuparon en Sam's Club Colobos.[15]

Entre los documentos que la parte apelada sometió en apoyo de su solicitud, incluyó una declaración jurada suscrita por la señora Wanda Fernández Román (señora Fernández Román), quien declaró que:

(1) Al momento de la declaración, se desempeñaba como *Market People Partner* de Sam's Club.

(2) Para el momento de los hechos, trabajaba como Gerente de Recursos Humanos del Sam's Club localizado en Plaza Escorial, Carolina (Sam's Club Plaza Escorial).

(3) Estuvo encargada de la coordinación del cierre del Sam's Club Colobos, desde la perspectiva de Recursos Humanos.

(4) Previo al cierre, Sam's Club Colobos operaba de forma independiente en términos de personal.

(5) Sam's Club Colobos tenía su propio staff gerencial, el cual podría incluir Gerente General, Co-gerente, Asistentes de Gerente, Supervisores o Team Leaders de Departamentos, y un Gerente de Recursos Humanos o "People Manager".

(6) El staff gerencial de una tienda era propio de dicha tienda y no intervenía en los asuntos gerenciales ni de administración personal de ninguna otra.

(7) La supervisión diaria del personal de cada tienda recaía en su staff gerencial.

---

[10] Íd., pág. 103. Véase el hecho propuesto como incontrovertido Núm. 12.

[11] Íd., págs. 103-104. Véanse los hechos propuestos como incontrovertidos Núm. 13-14.

[12] Íd., pág. 105. Véase el hecho propuesto como incontrovertido Núm. 15.

[13] Íd., pág. 106. Véanse los hechos propuestos como incontrovertidos Núm. 16-17.

[14] Íd., pág. 107. Véase el hecho propuesto como incontrovertido Núm. 19.

[15] Íd., págs. 107-113. Véanse los hechos propuestos como incontrovertidos Núm. 20-72.

(8) Walmart no tenía una práctica de trasladar asociados de una tienda a otra indiscriminadamente.

(9) En ciertas instancias, un asociado podría ser asignado a alguna tienda de la compañía para proveer apoyo temporero, sin que constituyera una transferencia de personal.

(10)   Las labores de auditoría que un "Líder de Equipo de UPC" podría desempeñar en otra tienda tampoco implicaban una transferencia de personal, puesto que se reportarían físicamente a la localidad en la que hacía la auditoría, pero la gestión administrativa de horas y nómina se hacía en su tienda base.[16]

El 18 de noviembre de 2021, los apelantes radicaron una *Oposición a solicitud de sentencia sumaria* en la que solicitaron al foro primario que declarara No Ha Lugar la *Moción de sentencia sumaria* promovida por Walmart.[17] Según adujeron, estaban en controversia los siguientes asuntos:

(1) Determinar que el despido de los empleados fue llevado a cabo por Walmart sin mediar causa justa.

(2) Determinar que la edad de los empleados fue un factor a considerar para despedir a los empleados.

(3) Determinar que los empleados debieron ser colocados a trabajar en otras localidades de Walmart en consideración a sus años de servicios [sic].

(4) Determinar que el Patrono no cumplió con su plan de cesantías.

(5) Determinar que los empleados cesanteados gozaban de derechos adquiridos al amparo de la Ley 80.[18]

Por otra parte, admitieron como incontrovertidos cincuenta y seis (56) de los hechos propuestos por Walmart. En contraste, disputaron lo siguiente:

(1) Los aspectos de personal de Sam's Club Colobos no se operaban independientemente porque la

---

[16] Apéndice del *Alegato en oposición a apelación*, págs. 1-3.

[17] Apéndice de la *Apelación*, Anejo 6, págs. 483-501.

Originalmente, el 1 de diciembre de 2021, el TPI emitió una *Orden*, notificada y archivada en autos el 6 de diciembre de 2021, en la que resolvió que la *Oposición a* la *moción de sentencia sumaria* fue presentada tardíamente. Apéndice del *Alegato en oposición a la apelación*, págs. 64-65.

Empero, el 3 de mayo de 2023, el TPI emitió una *Orden*, notificada y archivada el 8 de mayo de 2023, reconsideró su decisión y aceptó la oposición. Apéndice del *Alegato en oposición a la apelación*, págs. 66-67.

[18] Nótese que más allá de estos asuntos que denominaron "[a]suntos litigiosos o en controversia", los apelantes no realizaron una "relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal", tal y como mandata la Regla 36.3(b)(2) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b)(2).

señora Fernández Román, gerente de Recursos Humanos Sam's Club Plaza Escorial, estuvo a cargo del cierre de la tienda, como demostró su declaración jurada.

(2) Sam's Club Colobos contaba con un Gerente General que se reportaba a un funcionario de mayor jerarquía, lo cual implicaba que los aspectos de personal no eran cubiertos únicamente en la tienda.

(3) Walmart ejerció una supervisión diaria de Sam's Club Colobos porque, gracias a los procesos automáticos y tecnológicos, conocía al instante y diariamente las incidencias de recursos humanos.

(4) Era imposible que Sam's Club Colobos operara de forma independiente, según demostró tanto la declaración de la Gerente de Recursos Humanos, como las declaraciones de los empleados despedidos.

(5) La existencia de una *Política de transferencia y publicación de puestos 2015* que les aplicaba a todos los empleados de Walmart comprobó que los asuntos de administración no eran independientes, sino generales.

(6) La política de transferencias tampoco era inflexible y estricta, pues permitía omitir la publicación de puestos en ciertas circunstancias.

(7) Aunque la política de transferencias debía cumplir con las leyes pertinentes, no incluyó un enérgico reconocimiento de la empresa de prohibir el discrimen por edad.

(8) Ninguno de los apelantes recibió – ni Walmart probó que hubiesen recibido – copia de la *Política de transferencia y publicación de puestos 2015* mientras estaba empleado en Sam's Club Colobos, lo cual impidió que reclamaran traslados para evitar ser despedidos.

(9) La señora Fernández Román contradijo el planteamiento de que la administración de personal entre las tiendas no era integrada, toda vez que trabajó asuntos de la tienda cerrada.

(10) La apelante Ana del Valle Báez realizaba auditorías en otras localidades de Sam's Club, no se reportaba a ningún gerencial de Sam's Club Colobos y tampoco reportaba allí sus horas trabajadas. Aunque *de jure* era asociada en Sam's Club Colobos, laboraba en otras haciendo auditorías, sin reportarse en la tienda.

(11) La apelante Arleen Batista Rivera se reportaba directamente a la persona que se desempeñaba como Market Manager de la Oficina Central de Walmart.

(12) Walmart utilizó evidencia – un análisis financiero de Sam's Club Colobos – que no es fehaciente, confiable o admisible para apoyar su alegación de que el cierre total y permanente de la tienda respondió a que las ventas y membresías no alcanzaron la expectativa. El documento presentado no era original, no indicó quién fue su autor, no precisó cuándo se preparó, no expresó que fue preparado durante el curso de una actividad, no describió cómo fue almacenado y no identificó a la persona que tuvo el documento bajo su control y custodia. Sobre todo, el documento estaba mutilado, puesto que sus páginas fueron marcadas en negro y, en ocasiones, se añadió que su contenido era confidencial.

(13) Walmart no precisó si alguno de los empleados que trabajaba en Sam's Club Colobos fue trasladado a otro punto de trabajo. Es decir, no se estableció si todas las posiciones fueron eliminadas y, por lo tanto, pudieran estar trabajando en otras localidades u oficinas de Walmart.[19]

Por su cuenta, propusieron los siguientes siete (7) hechos como incontrovertidos y pertinentes:

(1) El despido de estos empleados comenzó a ejecutarse en el año 2017.

(2) Durante el proceso de cierre Walmart consideró que, al cerrar la localidad de Colobos, $16 Millones se transferiría[n] a Carolina y $3 Millones a San Juan. Apostó a una transferencia de ganancias utilizando uno de varios modelos (simulaciones) de cierre, en específico el **MODELO 3.0**.

(3) Las ganancias brutas comparadas con Enero 13, Enero 13 [sic], Enero 14, Enero 15, y Enero 17 es [sic] **11.07** vs 10.94 a 10.93. Lo que equivale a decir que la ganancia bruta fue mayor.

(4) Walmart tomó en cuenta que **30% de los empleados** serían transferidos. Sin embargo, no hay evidencia de que la empresa haya cumplido con su deber de traslado.

(5) La edad de los empleados de Walmart fue considerada en el proceso de cierre. Para ello confeccionó un documento intitulado **Segmento Demográfico para el Plan de Indemnización.** Esta tabla demuestra los siguientes hechos:

| Edad 18-30 | | | Edad 31-39 | | | Edad 40-50 | | | Edad 51- en adelante | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Accepted New Role | Does Not Qualify | Blank | Accepted New Role | Does Not Qualify | Blank | Accepted New Role | Does Not Qualify | Blank | Accepted New Role | Does Not Qualify | Blank |
| 35 | 16 | 23 | 25 | 6 | 34 | 12 | 3 | 34 | 1 | 2 | 21 |

Un análisis del universo de empleados de Walmart (191 empelados) a la fecha de preparación del documento, revela que:

**18% de los empleados <u>entre 18 a 30 años</u> se le ofreció y aceptaron nuevos roles *vis a vis* el <u>6%</u> de los empleados <u>entre 40 y 50 años</u> se le ofreció y aceptaron nuevos roles y el <u>0.5%</u> de los empleados de <u>más de 51 años</u> se le ofreció y aceptaron nuevos roles.**

**Es meritorio concluir que, a los empleados mayores de 40 años se le ofreció MENOS y, por lo tanto, aceptaron menos roles. Es un ejemplo claro de discrimen y, por ende, un despido injustificado.**

(6) El Plan de Cesantías de Walmart incluía no solamente el pago de un *severance pay* sino la responsabilidad de trabajar diligentemente para encontrar empleo a los asociados afectados, en otras localidades de Sams o Walmart. Walmart Puerto Rico incumplió con este deber.

(7) Walmart Puerto Rico, Inc. no informó efectivamente a los empleados si tendrían prioridad en el ejercicio de

---

[19] Nótese que los apelantes sí incluyeron un extenso párrafo con referencias <u>generales</u> a distintos anejos, sin hacer referencia específica a cómo sustentaban la alegada controversia de hechos materiales.

trabajar desde otra localidad. Indicaron que Walmart simplemente se limitó a "ofrecer" la oportunidad para competir para puestos vacantes bajo las mismas condiciones que cualquier otro ciudadano. Walmart Puerto Rico, Inc. no le explicó el proceso.[20]

Así, plantearon que Walmart: (1) presentó prueba inadmisible, inconsistente, incompleta y sin garantías mínimas de confiabilidad; (2) descansó simplemente en una declaración jurada para establecer los hechos relevantes y, por ello, debía tomarse con sospecha; (3) tenía un deber legal de trasladar a los apelantes a otros puestos, a la luz de la Ley Núm. 80-1978, *supra,* la *Política de transferencias y publicación de puestos* y el plan de cesantías; y (4) consideró discriminatoriamente la edad de los empleados al analizar el cierre de Sam's Club Colobos. Por último, arguyeron que las enmiendas de la *Ley de transformación y flexibilidad laboral,* Ley Núm. 4 de 2017, 29 LPRA secs. 121 *et seq.*, (Ley Núm. 4-2017), no debían ser aplicadas porque los apelantes fueron contratados antes de enero del 2017 y, además, hacerlo contravendría sus derechos adquiridos.

El 22 de mayo de 2023, Walmart presentó una *Réplica a "Oposición a solicitud de sentencia sumaria"* en la que refutó los argumentos esbozados por los apelantes en contra de los hechos materiales propuestos como incontrovertidos.[21]

En síntesis, adujo que los apelantes no controvirtieron de manera sustancial ningún hecho esencial y, además, reclamó que la *Oposición a solicitud de sentencia sumaria* adoleció de problemas de contenido y forma, en incumplimiento de la Regla 36.3(b)(2) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b)(2). A su entender, las alegadas controversias levantadas por los apelantes eran inexistentes o versaban sobre hechos inmateriales e impertinentes que no debían impedir la resolución sumaria de la reclamación. Igualmente, aseveró que el foro primario debía tomar por

---

[20] Apéndice de la *Apelación*, Anejo 6, págs. 494-496. (Énfasis, itálicas y subrayado en el original). Referencias a anejos omitidas.
[21] Íd., Anejo 7, págs. 502-521.

incontrovertidos todos los hechos, toda vez que la mayoría fueron admitidos por los apelantes, mientras que unos pocos no fueron adecuadamente impugnados. Más aún, enfatizó que los apelantes intentaron enmendar indebidamente la *Querella* al traer por primera vez planteamientos respecto al supuesto deber legal de Walmart de trasladar a los apelantes a otros puestos y a la inaplicabilidad de la Ley Núm. 4-2017, *supra*.

Además, alegó que los apelantes tampoco adujeron desde un inicio que aplicara la excepción de establecimientos integrados, ni presentaron hechos para constatarlo. Incluso, puntualizó que, en todo caso, la excepción no era aplicable al caso porque no existía evidencia para demostrar que, dentro del año inmediatamente anterior al cierre, ocurrieron transferencias entre Sam's Club Colobos y otras localidades o que la tienda y otros establecimientos estuvieran sujetos a una supervisión directa y común en la administración diaria del personal.

Por otra parte, disputó que Walmart tuviese que justificar el cierre total y permanente del establecimiento o establecer quién tomó la decisión. Empero, plasmó que, aunque fuera requerido, ofreció las razones con prueba admisible. Incluso, recalcó que los documentos que los apelantes denunciaron como incompletos o "mutilados" estuvieron en posesión de estos por más de dos (2) años sin que levantaran objeción o controversia alguna sobre las porciones editadas en negro. Asimismo, planteó que los documentos objetados no constituían prueba de referencia porque el fin probatorio de su presentación no era probar la verdad de lo aseverado en ellos, sino las motivaciones del patrono para tomar la decisión de cerrar Sam's Club Colobos.

El 26 de junio de 2023, los apelantes radicaron una *Dúplica a réplica a oposición a moción de sentencia sumaria* en la que nuevamente solicitaron al TPI que declarara No Ha Lugar la *Moción*

*de sentencia sumaria* promovida por Walmart.[22] En esta ocasión, reiteraron que: (1) no existía independencia en la administración de Sam's Club Colobos y los demás establecimientos operados por Walmart; (2) se consideró la edad de los empleados al determinar su despido, lo cual demuestra que el despido fue injustificado, independientemente de la desestimación de la causa de discrimen por edad; (3) Sam's Club Colobos no tuvo las pérdidas económicas citadas por la parte apelada; (4) las empleadas auditoras se reportaban directamente a las oficinas centrales de Walmart, estableciéndose supervisión directa y común, así como una operación interdependiente en cuanto a asuntos de personal; (5) existían excepciones a las políticas de traslados y Walmart no respondió si exempleados de Sam's Club Colobos seguían laborando en otras localidades de la compañía tras el cierre; (6) no podía admitirse el documento presentado por la parte apelada sobre las motivaciones que llevaron al cierre por estar incompleto, no indicarse su autor, no explicar cuándo se preparó, no expresar cómo estuvo almacenado, ni por quién; y (7) la declaración jurada de la señora Fernández Román constituía un *sham affidavit* que debía ser descartado.

El 24 de octubre de 2024, el TPI emitió la *Sentencia* apelada en la que declaró Ha Lugar la *Moción de sentencia sumaria* y, en consecuencia, desestimó con perjuicio la *Querella*.[23] En ella, determinó que hubo justa causa para el despido de todos los demandantes, en conformidad con los Arts. 2(d) y 3-A de la Ley Núm. 80-1976, *supra* secs. 185b y 185c-1, así como su jurisprudencia interpretativa. A su juicio, quedó establecido que el despido de los apelantes fue con justa causa debido al cierre total y permanente de las operaciones del establecimiento Sam's Club Colobos.

---

[22] Íd., Anejo 8, págs. 522-546.
[23] Íd., Anejo 1, págs. 1-29.

En aras de fundamentar el dictamen, el foro primario analizó los hechos esenciales y pertinentes, según propuestos por Walmart, apoyados en la prueba admisible y no controvertidos por los apelantes y formuló las siguientes determinaciones de hechos:

1. En Puerto Rico, Walmart Puerto Rico, Inc. opera varios establecimientos comerciales incluyendo, entre otros, sus tiendas club conocidas como Sam's Club.
2. Sam's Club Colobos operaba de forma independiente en cuanto a los aspectos de personal.
3. Sam's Club Colobos contaba con su propio staff gerencial, que puede incluir un Gerente General, Co-gerente, Asistentes de Gerente, Supervisores o Team Leaders de Departamentos, y un Gerente de Recursos Humanos o "People Manager". El staff gerencial de una tienda es propio de dicha tienda y no interviene en los asuntos gerenciales ni de administración personal de ninguna otra. La supervisión diaria del personal de cada tienda recae en su staff gerencial.
4. Walmart no tiene una práctica de trasladar asociados de una tienda a otra indiscriminadamente.
5. A fin de atender la posibilidad de transferir empleados de una tienda a otra, Walmart creó una Política de Transferencias y Publicación de Puestos, la cual, a la fecha pertinente a esta reclamación estaba vigente.
6. Según admitieron todos los demandantes, para que ocurra una transferencia de un asociado de una tienda a otra, primero debe de existir una vacante y el asociado deberá de [sic] solicitar la misma.
7. Para que un asociado pueda transferirse entre tiendas tiene que cumplir con ciertos requisitos de umbral establecidos en la Política de Transferencia.
8. Una vez cumplidos estos requisitos de umbral, el asociado tiene que ser escogido para la plaza vacante, lo que incluye pasar un proceso de entrevista y que se le haga una oferta. Sólo si el asociado acepta dicha oferta, será transferido a la tienda en la que solicitó la plaza vacante.
9. En el caso particular de empleados que ocupaban la posición de "Líder de Equipo de UPC" estos pudieran haber sido asignados en capacidad de auditores a llevar a cabo auditorías en otras tiendas. Por la naturaleza del trabajo esto no era una transferencia de personal pues el empleado en cuestión permanecía asignado a su tienda base. La persona se reportaba físicamente a la tienda en donde hacía la auditoría pero, no obstante, no ponchaba sus horas en dicha tienda, sino que tenía que preparar un informe de horas, el cual sometía a la tienda base para el correspondiente pago de nómina. Además, cualquier gestión de Recursos Humanos la tenía que terminar en su tienda base.
10. Para el 19 de julio de 2017, todos los demandantes eran asociados de Sam's Club Colobos.
11. El 19 de julio de 2017, todos los asociados de Sam's Club Colobos fueron notificados del cierre total de las operaciones de Sam's Club Colobos.

12. El 19 de julio de 2017, todos los asociados de Sam's Club Colobos fueron notificados que no tendrían que reportarse más a trabajar en el referido club.

13. Luego del 19 de julio de 2017, Sam's Club Colobos nunca reanudó operaciones en dicho establecimiento como tal club, por lo que no reabrió al público general.

14. Aunque originalmente la fecha de terminación iba a ser el 29 de septiembre de 2017, debido al paso del Huracán María por Puerto Rico el 20 de septiembre de 2017, Walmart decidió extender la fecha efectiva de terminación hasta el 13 de octubre de 2017.

15. En efecto, todos los demandantes fueron cesanteados efectivo el 13 de octubre de 2017.

16. No hay ninguna persona que hubiera sido empleado de Sam's Club Colobos que a partir de su cierre continúe trabajando allí porque el club cerró total y definitivamente.

17. En la medida en que todos los empleados cesaron en sus funciones a causa del cierre total y permanente de dicha tienda, todas las clasificaciones ocupacionales existentes en Sam's Club Colobos fueron eliminadas.

18. El co-demandante Amado Carrasquillo Agosto ("Carrasquillo") comenzó a trabajar para la parte demandada el 14 de agosto de 2003 como empleado por tiempo indeterminado.

19. La última posición ocupada por Carrasquillo en Sam's Club Colobos fue "Asociado de Mantenimiento".

20. El co-demandante Amado Casillas Estrada ("Casillas") comenzó a trabajar para la parte demandada el 15 de julio de 1992 como empleado por tiempo indeterminado.

21. La última posición ocupada por Casillas en Sam's Club Colobos fue "Asociado de Demostraciones".

22. La co-demandante Ana L. Del Valle Báez ("Del Valle") comenzó a trabajar para la parte demandada el 9 de junio de 1997 como empleada por tiempo indeterminado.

23. La última posición ocupada por Del Valle en Sam's Club Colobos fue "Líder de Equipo de UPC".

24. El co-demandante Ángel A. Sosa Flores ("Sosa") comenzó a trabajar para la parte demandada el 15 de junio de 2007 como empleado por tiempo indeterminado.

25. La última posición ocupada por Sosa en Sam's Club Colobos fue "Operador de Montacargas (Nocturno)".

26. La co-demandante Angie N. Rivera Vázquez ("Rivera") comenzó a trabajar para la parte demandada el 9 de enero de 2001 como empleada por tiempo indeterminado.

27. La última posición ocupada por Rivera en Sam's Club Colobos fue "Asociada del Equipo de Auditoría" (*Audit Associate*).

28. La co-demandante Arleen Batista Rivera ("Batista") comenzó a trabajar para la parte demandada el 12 de septiembre de 2007 como empleada por tiempo indeterminado.

29. La última posición ocupada por Batista en Sam's Club Colobos fue "*Optical Manager*".

30. El co-demandante Edgar López Díaz ("López") comenzó a trabajar para la parte demandada el 8 de marzo de 1999 como empleado por tiempo indeterminado.

31. La última posición ocupada por López en Sam's Club Colobos fue Auditor.

32. El co-demandante Félix A. Pérez Danet ("Pérez Danet") comenzó a trabajar para la parte demandada el 4 de marzo de 2005 como empleado por tiempo indeterminado.

33. La última posición ocupada por Pérez Danet en Sam's Club Colobos fue "Líder de Equipo de Frutas y Verduras" (*Department Manager Produce*).

34. La co-demandante Gloriana I. Pérez Vega ("Pérez Vega") comenzó a trabajar para la parte demandada el 5 de noviembre de 2008 como empleada por tiempo indeterminado.

35. La última posición ocupada por Pérez Vega en Sam's Club Colobos fue "Embajadora de Bienvenida" (*MBR Greeter*).

36. El co-demandante José A. Hernández Cartagena ("Hernández") comenzó a trabajar para la parte demandada el 25 de agosto de 2008 como empleado por tiempo indeterminado.

37. La última posición ocupada por Hernández en Sam's Club Colobos fue "Asociado de Mantenimiento".

38. El co-demandante José N. Torrens Mercado ("Torrens") comenzó a trabajar para la parte demandada el 8 de marzo de 2004 como empleado por tiempo indeterminado.

39. La última posición ocupada por Torrens en Sam's Club Colobos fue "Asociado de Prevención de Pérdidas" (*Loss Prevention*).

40. La co-demandante Laura Rosado Tirado ("Rosado") comenzó a trabajar para la parte demandada el 13 de octubre de 1997 como empleada por tiempo indeterminado.

41. La última posición ocupada por Rosado en Sam's Club Colobos fue "Asociada de Ventas de Sección Central".

42. La co-demandante Leslie A. Castillo Algarín ("Castillo") comenzó a trabajar para la parte demandada el 11 de septiembre de 2002 como empleada por tiempo indeterminado.

43. La última posición ocupada por Castillo en Sam's Club Colobos fue Asociada de Servicio al Cliente.

44. La co-demandante Leticia Encarnación Hiraldo ("Encarnación") comenzó a trabajar para la parte demandada el 22 de octubre de 2002 como empleada por tiempo indeterminado.

45. La última posición ocupada por Encarnación en Sam's Club Colobos fue "Empacadora de Panadería".

46. La co-demandante Luz E. Santana Rodríguez ("Santana") comenzó a trabajar para la parte demandada el 21 de agosto de 2008 como empleada por tiempo indeterminado.

47. La última posición ocupada por Santana en Sam's Club Colobos fue "Supervisor Front End", Santana continuó trabajando en dicho establecimiento hasta su cesantía del empleo.

48. La co-demandante Magaly Nieves Ramírez ("Nieves") comenzó a trabajar para la parte demandada el 18 de octubre de 2006 como empleada por tiempo indeterminado.

49. La última posición ocupada por Nieves en Sam's Club Colobos fue "Empacadora de Carnes".

50. La co-demandante María E. Calderón Díaz ("Calderón") comenzó a trabajar para la parte demandada el 23 de septiembre de 2002 como empleada por tiempo indeterminado.

51. La última posición ocupada por Calderón en Sam's Club Colobos fue "Operadora de Teléfonos".

52. La co-demandante María del Carmen Gontán Meléndez ("Gontán") comenzó a trabajar para la parte demandada el 6 de septiembre de 2004 como empleada por tiempo indeterminado.

53. La última posición ocupada por Gontán en Sam's Club Colobos fue "Asociada de Equipo de Auditoría".

54. La co-demandante Marie C. Márquez Arana ("Márquez") comenzó a trabajar para la parte demandada el 23 de septiembre de 2002 como empleada por tiempo indeterminado.

55. La última posición ocupada por Márquez en Sam's Club Colobos fue Teller.

56. La co-demandante Nilda I. Santiago Peraza ("Santiago") comenzó a trabajar para la parte demandada el 11 de octubre de 2005 como empleada por tiempo indeterminado.

57. La última posición ocupada por Santiago en Sam's Club Colobos fue "Asociada de Mantenimiento".

58. El co-demandante Óscar L. Látimer Negrón ("Nieves") comenzó a trabajar para la parte demandada el 12 de mayo de 1998 como empleado por tiempo indeterminado.

59. La última posición ocupada por Látimer en Sam's Club Colobos fue "Asociado Líder de Recibo" (*Team Leader de Recibo*).

60. El co-demandante Richard Fontanet Acevedo ("Fontanet") comenzó a trabajar para la parte demandada el 7 de enero de 2009 como empleado por tiempo indeterminado.

61. La última posición ocupada por Fontanet en Sam's Club Colobos fue "Tablajero (Carnicero)".

62. La co-demandante Rosa M. Mercado López ("Mercado") comenzó a trabajar para la parte demandada el 18 de septiembre de 2002 como empleada por tiempo indeterminado.

63. La última posición ocupada por Mercado en Sam's Club Colobos fue "Decoradora de Bizcochos".

64. La co-demandante Shiela R. Flores Sánchez ("Flores") comenzó a trabajar para la parte demandada el 11 de septiembre de 2003 como empleada por tiempo indeterminado.

65. La última posición ocupada por Flores en Sam's Club Colobos fue "Asociada Líder de Joyería".

66. La co-demandante Vilma Colón García ("Colón") comenzó a trabajar para la parte demandada el 7 de octubre de 1995 como empleada por tiempo indeterminado.

67. La última posición ocupada por Colón en Sam's Club Colobos fue "Asociada Líder de Demostraciones".

68. La co-demandante Zuneida González García ("González") comenzó a trabajar para la parte demandada el 19 de noviembre de 2003 como empleada por tiempo indeterminado.

69. La última posición ocupada por González en Sam's Club Colobos fue "Asociada de Ventas de Gomas" (*Sales Associate*).[24]

Basándose en dichas determinaciones, el foro primario resolvió que: (1) existió justa causa porque los despidos respondieron al cierre total y permanente de Sam's Club Colobos; (2) las enmiendas de la Ley Núm. 4-2017, *supra,* a la Ley Núm. 80-1976, *supra,* eran aplicables a los apelantes; (3) no aplicaba la excepción de establecimientos integrados, según delineada en el Art. 3-A de la Ley Núm. 80-1976, *supra,* porque no se cumplieron los requisitos estatuidos; (4) la declaración jurada de la señora Fernández Román en apoyo de la *Moción de sentencia sumaria* cumplió cabalmente con la Regla 36.5 de Procedimiento Civil, *supra,* R. 36.5, se basó en conocimiento personal de esta y no constituyó un *sham affidavit*; y (5) las controversias planteadas por los apelantes sobre el descubrimiento de prueba no versaban sobre hechos materiales que cambiaran el resultado del pleito e, independientemente de ellas, lo establecido por el Art. 3-A de la Ley Núm. 80-1976, *supra,* no les favorecía.

Más específicamente, el foro primario resolvió que el argumento de los apelantes sobre la inaplicabilidad de las enmiendas de la Ley Núm. 4-2017, *supra,* constituía una enmienda impermisible de la *Querella* y, en todo caso, les aplicaban los cambios porque fueron despedidos luego de la aprobación del estatuto. De la misma manera, descartó el planteamiento de los apelantes respecto a la alegada operación integrada de los establecimientos de Walmart porque también constituyó una enmienda impermisible de la *Querella* y, además, porque los apelantes no aportaron evidencia para sostener que se cumplieran los requisitos establecidos en la Ley Núm. 80-1976, *supra,* ni

---

[24] Íd., págs. 4-10. (Notas al calce omitidas).

identificaron qué localidad era operada integradamente con Sam's Club Colobos. Por un lado, concluyó que el desempeño de la señora Del Valle Báez como auditora, asignada temporera y limitadamente en otro establecimiento mientras continuaba adscrita a Sam's Club Colobos, no permitía concluir que las localidades fueran operadas integradamente. Por otro lado, resolvió que el envolvimiento de la señora Fernández Román con el Sam's Club Colobos fue incidental al cierre de dicha tienda. En esencia, dictaminó que no se constituyó el requisito de supervisión directa común en la administración diaria del personal entre varios establecimientos porque la evidencia demostró que Sam's Club se operaba independientemente y tenía su propio *staff* gerencial, el cual no intervenía en los asuntos gerenciales o de administración de otra tienda, únicamente en los suyos.

Inconformes, el 26 de noviembre de 2024, los apelantes presentaron la *Apelación* de epígrafe y le imputaron al TPI la comisión de los siguientes errores:

> Erró el Tribunal de Primera Instancia como consecuencia de un análisis parcializado e interpretación errónea del Derecho por las siguientes razones:
>
> (A) El TPI violentó los derechos constitucionales del demandante al permitir evidencia inadmisible en apoyo a la solicitud de sentencia sumaria.
> (B) El TPI adjudicó la inexistencia de hechos en controversia en consideración a prueba de referencia, incompleta y poco confiable.
> (C) El TPI ignoró el precedente *Ortiz Ortiz vs. Medtronic,* 209 DPR __ 2022TSPR76, el cual le impone al patrono el peso de la prueba y, en su consecuencia, exige la presentación de evidencia preponderante sobre la causa justificada del despido.
> (D) El TPI prescindi[ó] de los derechos adquiridos de los empleados.
> (E) El TPI aplicó incorrectamente las normas procesales y casuística aplicable al concluir que la contestación del demandante a la SSS del demandado constituía una enmienda impermisible de la demanda.

Es su posición que la moción de sentencia sumaria no procedía porque estaba basada en una declaración jurada de una persona con interés claro en el litigio, cuyas expresiones constituyeron

prueba de referencia admisible, y en un documento mutilado e incompleto, cuya confidencialidad Walmart no justificó. Sobre este último, titulado *Club Closure Toolkit*, especulan que las porciones ennegrecidas y en blanco del documento podrían contener un flujograma que Walmart tenía que respetar por derecho contractual de los empleados.

A su vez, plantean que las enmiendas de la Ley Núm. 4-2017, *supra*, a la Ley Núm. 80-1976, *supra*, no aplican al caso y, en consecuencia, le corresponde a Walmart el peso de la prueba de demostrar que hubo justa causa para el despido. A su entender, en virtud de ***González Santiago v. Baxter Healthcare*,** 202 DPR 281 (2019) y ***Ortiz Ortiz v. Medtronic*,** 209 DPR 759 (2022), el patrono tiene el peso de la prueba cuando el despedido fue contratado antes de la entrada en vigor de la Ley Núm. 4-2017, *supra*. Por eso, nos exhortan a resolver que los empleados debían ser reubicados en otras tiendas de la misma empresa.

Todavía más, argumentan que Walmart no logró probar: (1) la existencia de una condición económica adversa en la empresa; (2) cambios tecnológicos que afectaran las operaciones; (3) que el despido fuera necesario para el buen funcionamiento de la empresa; (4) un análisis de antigüedad considerando el cierre total del establecimiento; ni (5) una reducción en producción, venta o ganancias. En contraste, arguyen que demostraron que Sam's Club Colobos había tenido un desempeño positivo en ventas en su último segmento operativo y que Walmart se proponía transferir el volumen de ventas de la tienda a otros establecimientos, según el *Club Closure Toolkit*.

Por último, esbozan que el TPI concluyó incorrectamente que los apelantes intentaron enmendar la *Querella* mediante la *Oposición a moción de sentencia sumaria*, toda vez que basaron sus argumentos en la prueba presentada por Walmart en apoyo de su

solicitud y, en todo caso, el foro primario poseía discreción para permitir enmiendas a las alegaciones.

En apoyo de la *Sentencia* apelada, el 26 de diciembre de 2024, Walmart radicó un *Alegato en oposición a apelación* en el que solicitó que confirmemos el dictamen apelado. En esencia, su contención es que nada impedía la desestimación sumaria, que Walmart demostró justa causa para el despido de los apelantes y que los apelantes no pudieron derrotar los hechos materiales según propuso en su solicitud.

A su entender, los apelantes:

(1) Carecían de prueba para demostrar en juicio que los despidos fueron injustificados.
(2) No crearon controversia genuina respecto a los hechos materiales según propuestos por Walmart.
(3) No aportaron prueba admisible para derrotar el hecho de que Sam's Club Colobos cerró total y permanentemente y que todos los empleados fueron impactados por el cierre.
(4) No establecieron que Walmart tuviera la obligación legal de reubicarlos en otros establecimientos.
(5) Renunciaron a cualquier alegación respecto a la figura de establecimientos integrados porque no la presentaron en la *Querella*, ni identificaron que hubiese ocurrido en cuanto a su clasificación ocupacional, ni indicaron a qué otra localidad específica estuvo integrada Sam's Club Colobos.
(6) No hicieron un recuento de los hechos procesales del caso, ni precisaron cuáles estaban en controversia.
(7) No pusieron al Tribunal de Apelaciones en posición de analizar si existen hechos en controversia, ni la prueba que alegan que los controvierte.
(8) Aceptaron cincuenta y seis (56) hechos, cuestionaron dieciséis (16) sin presentar evidencia admisible y expusieron siete (7) como controvertidos, los cuales no eran más que alegaciones conclusorias, opiniones o inmateriales.
(9) Omitieron de su argumentación que el cierre total y permanente constituye justa causa bajo la Ley Núm. 80-1976, *supra.*
(10) Intentaron enmendar la *Querella* mediante la *Oposición a moción de sentencia sumaria* porque incluyeron reclamaciones o teorías nuevas por primera vez en el pleito.

Respecto a los documentos, arguye que estos fueron inmateriales a la determinación del TPI, fueron producidos en el descubrimiento de prueba bajo un Acuerdo de Confidencialidad y

estuvieron en posesión de los apelantes por dos (2) años, sin que estos se expresaran sobre ellos.

Sobre la declaración jurada de la señora Fernández Román, plantea que la misma cumple con la Regla 36.5 de Procedimiento Civil, *supra*, y enfatiza que, para declarar, la persona no tiene que estar totalmente desvinculada del pleito. Según advierte, lo contrario excluiría a los propios apelantes de sostener su *Oposición a moción de sentencia sumaria* o, incluso, su propia solicitud de sentencia sumaria. Entretanto, señala que los apelantes no demostraron que la declarante no tenía conocimiento personal para fundamentar lo que declaró. Al respecto, precisa que la señora Fernández Román tuvo a su cargo el cierre de Sam's Club Colobos desde la perspectiva de Recursos Humanos. Además, alega que era lógico que fuera así porque la posición de Recursos Humanos de Sam's Club Colobos fue eliminada con el cierre.

Asimismo, reitera que no se cumplió con ninguno de los criterios de la excepción de establecimientos integrados. Por un lado, destaca que no se probó que hubiese una supervisión directa y común sobre Sam's Club Colobos. Por el otro, subraya que los traslados aislados e irregulares no son suficientes para demostrar que el establecimiento era operado de forma integrada con otras localidades, de conformidad con ***Reyes Sánchez v. Eaton Electrical,*** 189 DPR 586, 604 (2013).

También, aduce que ***Ortiz Ortiz v. Medtronic,*** *supra*, es inaplicable porque el presente caso surgió después de la aprobación de la Ley Núm. 4-2017, *supra*. Para la parte apelada, incluso si se descartara dicho planteamiento, el referido estatuto no excluyó a los empleados contratados antes de su aprobación y, por ello, a los apelantes les corresponde el peso de probar la justa causa, debido que fueron despedidos durante su vigencia.

Por último, agregó que en ***Delia Medina Medina y otros v. Walmart Puerto Rico, Inc. y otros,*** CC-2020-637 (Sentencia), un caso con hechos idénticos y litigado por los mismos abogados de este caso, el Tribunal Supremo resolvió que procedía la desestimación sumaria de una reclamación por despido injustificado ante el cierre total de las operaciones del establecimiento y que no operaba la obligación de retención del patrono aplicada a otras localidades porque la tienda operaba de forma independiente.

Esbozados los hechos procesales, así como los planteamientos de ambas partes, pormenorizamos el derecho aplicable a la controversia presentada por la *Apelación* de epígrafe.

**III.**

**A.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. ***Rodríguez García v. UCA***, 200 DPR 929, 940 (2018); ***Bobé et al. v. UBS Financial Services***, 198 DPR 6, 20 (2017); ***SLG Zapata-Rivera v. J.F. Montalvo***, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad de la reclamación o parte de esta. De esta forma, se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. ***Vera v. Dr. Bravo***, 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que **sean claros**; cuando el tribunal tenga ante sí la verdad de todos los hechos

esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. ***PFZ Props., Inc. v. Gen. Acc. Ins. Co.***, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. ***León Torres v. Rivera Lebrón,*** 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 138 (2015); ***Ramos Pérez v. Univisión***, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. ***Ramos Pérez v. Univisión***, supra, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. Íd., págs. 213-214, *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. ***Meléndez González et al. v. M. Cuebas***, supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a ***Ramos Pérez v. Univisión,*** supra, pág. 214. De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. ***León Torres v. Rivera Lebrón,*** supra. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. ***SLG Zapata-Rivera v. JF Montalvo***, supra; ***Ramos Pérez v. Univisión***, supra, pág. 215; ***Cruz Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007). Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil, *supra*, en lo pertinente a este mecanismo procesal. Entre estos, la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) dispone:

> (b) La contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente:
> (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;

(2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existan alegaciones afirmativas en la demanda sin refutar; (3) cuando surja de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no proceda como cuestión de derecho. ***Oriental Bank v. Perapi***, 192 DPR 7, 26-27 (2014).

Entretanto, desde el punto de vista procesal, la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, impone que, si en virtud de una moción de sentencia sumaria no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y resulta necesario celebrar un juicio, entonces es obligatorio que el tribunal resuelva la moción realizando una determinación: (1) de los hechos esenciales y pertinentes sobre los que no hay controversia sustancial; (2) de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos; (3) de hasta qué extremo la cuantía de los daños u otra reparación no está en controversia; y (4) ordenando los procedimientos ulteriores que entienda justos, lo cual podría incluir una vista evidenciaria limitada a los asuntos en controversia. En dicho caso, al celebrarse

el juicio se considerarán probados los hechos especificados, se procederá en conformidad y, a base de las determinaciones realizadas en virtud de esta regla, se dictarán los remedios que correspondan, si alguno. Íd.

De otra parte, en ***Meléndez González et al. v. M. Cuebas***, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra,* y los criterios que la jurisprudencia le exige al foro primario. Íd., pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra.* Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4. Íd.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho. Íd., pág. 119.

**B.**

En específico, sobre las declaraciones juradas presentadas en apoyo o en oposición de una solicitud de sentencia sumaria, la Regla 36.5 de Procedimiento Civil, *supra,* preceptúa que se basarán en el conocimiento personal de quien declara en ellas. Además, dispone que "[c]ontendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el o la declarante está cualificado para testificar en cuanto a su contenido". Íd.

Entretanto, la Regla 36.7 de Procedimiento Civil, *supra,* R. 36.7, obliga al foro primario a imponer sanciones si se prueba a su satisfacción que una declaración jurada fue presentada de mala fe o con propósitos dilatorios, quedando expuesta la parte o su representación a la imposición de desacato.

En armonía con lo anterior, nuestro Tribunal Supremo en ***SLG Zapata-Rivera v. J.F. Montalvo,*** supra, importó la doctrina del *sham affidavit,* cuyo origen se remonta a determinaciones de los tribunales apelativos federales con acogida en la mayoría de los estados. En virtud de esta doctrina, se impide que una parte intente crear una controversia de hechos materiales utilizando un testimonio reciente que contradice una previa declaración bajo juramento si no se provee una explicación para la contradicción. ***SLG Zapata-Rivera v. J.F. Montalvo,*** supra, pág. 439. Por ello, el juzgador no podrá considerar una declaración jurada provista por la parte promovida si su contenido es claramente incompatible con una versión de los hechos provista anteriormente y quien la presenta no aclara la discrepancia. Íd., pág. 440. Es decir, el tribunal rechazará una declaración jurada posterior si la

inconsistencia entre las dos declaraciones resulta evidente y no hay una explicación adecuada para la nueva versión. Íd. En esa ocasión, nuestro más alto foro aplicó la doctrina ante un demandante que omitió hechos materiales y esenciales a su causa de acción en sus respuestas vertidas en una deposición, pero luego, en oposición a una moción solicitando sentencia sumaria, reveló los hechos a través de una declaración jurada.

Posteriormente, en *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209 (2015), se desarrolló aún más la doctrina del *sham affidavit.* En esa ocasión, se aplicó la doctrina en su modalidad de contradicción a un demandante que para oponerse a una moción de sentencia sumaria presentó una declaración jurada totalmente contraria a su testimonio en una deposición. Esta modalidad aplica cuando: (1) una parte ha sido examinada mediante preguntas precisas y libres de ambigüedad y ha respondido en detalle durante una deposición o ha prestado previamente una declaración clara e inequívoca bajo juramento; (2) al momento de oponerse a la solicitud de sentencia sumaria esa parte presenta una declaración posterior cuyo contenido es claramente incompatible con la versión ofrecida; (3) la incompatibilidad entre las dos declaraciones resulta evidente, manifiesta o patente, y no se trata de meras discrepancias de poca transcendencia o errores de buena fe; (4) no se ofrece explicación adecuada para la nueva versión, y (5) la declaración posterior no responde al descubrimiento de nueva evidencia, la cual a pesar de una diligencia razonable, no pudo descubrirse o no estuvo disponible al momento en que se prestó la declaración previa incompatible. Íd., págs. 221-222.

Ahora bien, en cuanto a los últimos dos requisitos, el tribunal deberá permitir que el proponente de la declaración jurada ofrezca una explicación adecuada para la nueva versión, la cual no puede descansar en meras ambigüedades o planteamientos

estereotipados. Íd., pág. 222. Esto último responde a que la parte que ha declarado bajo juramento tiene una carga considerable cuando intenta deshacerse de esa declaración anterior. Íd.

Por último, cabe destacar que, en ***Lugo Montalvo v. Sol Meliá Vacation,*** supra, nuestro más alto foro consideró el momento en que la declaración jurada fue preparada – cuatro (4) días antes de presentar la oposición – como elemento indicativo adicional de que la declaración jurada fue elaborada con la intención de crear una controversia artificial. Íd., pág. 224.

### C.

Según establece la Regla 1 de Procedimiento Civil, *supra,* R. 1, las Reglas de Procedimiento Civil deben ser interpretadas de forma que "faciliten el acceso a los tribunales y el manejo del proceso, de forma que garanticen una solución justa, rápida y económica". Siguiendo ese mismo espíritu, nuestro Tribunal Supremo ha delineado una clara política pública de que los casos deben ventilarse en los méritos. ***Colón Rivera v. Wyeth Pharm.,*** 184 DPR 184, 198 (2012); ***Rivera et al. v. Superior Pkg, Inc. et al.,*** 132 DPR 115, 124 (1992).

Por lo anterior, en el contexto de las enmiendas a las alegaciones, tanto las Reglas de Procedimiento Civil, *supra*, como la doctrina interpretativa favorecen su autorización. Regla 13.1 de Procedimiento Civil, *supra,* R. 13.1; ***Colón Rivera v. Wyeth Pharm.,*** supra; ***S.L.G. Font Bardón v. Mini-Warehouse,*** 179 DPR 322 (2010). En concreto, la Regla 13.1 de Procedimiento Civil, *supra,* R. 13.1, dispone lo siguiente:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva, o si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. **En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente**

> **cuando la justicia así lo requiera.** La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal de otro modo lo ordene. (Énfasis nuestro).

Así, esta Regla establece una directriz respecto a la concesión liberal de este remedio, disponiendo que se procede autorizarlo "cuando la justicia así lo requiera". ***S.L.G. Sierra v. Rodríguez,*** 163 DPR 738, 747 (2005). Además, faculta al tribunal con discreción para determinar la procedencia de la enmienda a las alegaciones y, como norma general, favorece que se conceda. Íd.

Para guiar a los tribunales en la evaluación de solicitudes para enmendar las alegaciones, nuestro más alto foro ha diseñado los siguientes criterios: (1) el impacto del tiempo transcurrido previo a la enmienda; (2) la razón de la demora; (3) el perjuicio a la otra parte y (4) la procedencia de la enmienda solicitada. ***León Torres v. Rivera Lebrón,*** 204 DPR 20, 35-36 (2020); ***S.L.G. Font Bardón v. Mini-Warehouse,*** supra, pág. 334; ***S.L.G. Sierra v. Rodríguez,*** supra, pág. 748. Estos criterios deben ser analizados en conjunto. ***S.L.G. Sierra v. Rodríguez,*** supra, págs. 749-750. Sin embargo, el factor más importante, determinante y de mayor relevancia es el perjuicio indebido que la enmienda pueda causar a la parte contraria, sin que ello signifique que los demás elementos no deban ser considerados. ***Colón Rivera v. Wyeth Pharm.,*** supra, pág. 204; ***S.L.G. Sierra v. Rodríguez,*** supra, pág. 750.

En ese análisis, debe considerarse que ocurre un perjuicio indebido cuando la enmienda: "(1) cambia sustancialmente la naturaleza y el alcance del caso, convirtiendo la controversia inicial en tangencial, o (2) obliga a la parte contraria a incurrir en nuevos gastos, alterar su estrategia en el litigio o comenzar nuevo descubrimiento de prueba". Íd. Por eso, se ha teorizado que el

perjuicio debe ser indebido en el "sentido de que coloque a la parte contraria en una situación de desventaja respecto a lo que es el trámite ordenado del litigio". Íd., pág. 200, citando a W. Vázquez Irizarry, *Procedimiento Civil*, 75 Rev. Jur. UPR 175, 197 (2006).

Por el contrario, un mero cambio de teoría en las alegaciones no constituye perjuicio indebido. Íd.; ***S.L.G. Font Bardón v. Mini-Warehouse,*** supra, pág. 336. Asimismo, el tiempo transcurrido entre la presentación de la *Demanda* original y la enmienda propuesta, por sí solo, tampoco causa perjuicio indebido. Íd. pág. 199; ***S.L.G. Sierra v. Rodríguez,*** supra, pág. 749.

Ahora bien, la Regla 13.2 de Procedimiento Civil, *supra*, R. 13.2 permite la enmienda tácita de las alegaciones. Así, "[c]uando con el consentimiento expreso o implícito de las partes se sometan a juicio cuestiones no suscitadas en las alegaciones, aquéllas se considerarán para todos los efectos como si se hubieran suscitado en las alegaciones". No obstante, esta disposición aplica a situaciones en las que se hacen nuevas alegaciones durante el juicio o una vista en su fondo y no a situaciones en las que los hechos y controversias fueron evaluados y adjudicados sumariamente. ***Mayagüez Hilton Corp. v. Betancourt,*** 156 DPR 234, 256-257 (2002). De esa forma, no es posible enmendar las alegaciones mediante una moción de sentencia sumaria. Íd., pág. 256. En ello, coincidió el tratadista José A. Cuevas Segarra, quien estimó que:

> [e]s contrario a las Reglas, que se entiendan enmendadas las alegaciones por vía de una moción de sentencia sumaria o de desestimación. Tales mociones no pueden considerarse, ni son alegaciones permitidas dentro de la Regla 5.1 y 13 de Procedimiento Civil. Más aún, cuando rige el principio invertebrado de que las alegaciones no constituyen prueba, por lo que tampoco podrían tener el efecto de considerarse enmendadas para conformarlas con una prueba inexistente. J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2ª edición, San Juan, Publicaciones JTS, 2011, T. II, pág. 611.

**D.**

El Art. III, Sec. 16, de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, consagra el derecho de todo trabajador a seleccionar libremente su ocupación, así como renunciar a ella.

Dentro de ese marco constitucional, la Asamblea Legislativa promulgó la Ley Núm. 80-1976, *supra,* el principal estatuto de protección al exempleado que ha sido privado de su trabajo sin justificación y como mecanismo para desalentar dicha práctica mediante el pago de una indemnización por parte del patrono. *González Méndez v. Acción Social et al.,* 196 DPR 213, 229 (2016). Esto, a su vez, responde al interés apremiante del Estado de regular las relaciones obrero-patronales y de evitar las prácticas injustas del trabajo, así como una clara política pública de proteger los derechos de los trabajadores. *Díaz v. Wyndham Hotel Corp.,* 155 DPR 364, 374 (2001); *Arroyo v. Rattan Specialties, Inc.,* 117 DPR 35 (1986). Y es que, de ordinario, el despido implica para la persona afectada la pérdida del sustento y del principal medio de acceso a los artículos y servicios indispensables del día a día. Íd.

Ahora bien, la Ley Núm. 80-1976, *supra,* no prohibió el despido de forma absoluta, sino que le impuso al patrono un elemento disuasivo para no despedir al obrero sin justa causa. De esa forma, un patrono puede despedir a un empleado sin causa alguna y estará sujeto al pago de una mesada, pero, para evitarlo, tendrá que demostrar la existencia de una justa causa para la destitución. *Romero et als. v. Cabrer Roig et als.,* 191 DPR 643, 651 (2014).

Así, el Art. 1 de la Ley Núm. 80-1976, *supra* sec. 185a, prescribe que:

> Todo empleado que trabaja para un patrono mediante remuneración, contratado sin tiempo determinado, que fuere despedido sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono por concepto de indemnización por despido lo siguiente:

(a) Una cantidad equivalente a tres (3) meses de sueldo por concepto de indemnización, siempre y cuando haya culminado el periodo probatorio aplicable según se dispone en esta Ley, o el periodo probatorio distinto que las partes hayan estipulado; y

(b) Una cantidad equivalente a dos (2) semanas de sueldo por cada año completo de servicio.[25]

Entretanto, el Art. 2 de la Ley Núm. 80-1976, *supra* sec. 185b, dispone que "[s]e entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono". Asimismo, establece diversas razones que afectan el buen y normal funcionamiento de un establecimiento, las cuales se entenderán como justa causa, en la siguiente lista no taxativa:

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

**(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.**

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. Íd. (Énfasis nuestro).

---

[25] Como se explica en el análisis subsiguiente de esta Sección, la Sección E y la Parte IV de esta *Sentencia*, las disposiciones de la Ley Núm. 80-1976, *supra*, aplicables a este caso son las vigentes, según enmendadas por la Ley Núm. 4-2017, *supra*. Por esa razón, las citamos tal cual.

De dicha lista se desprenden razones para el despido que dependen de la conducta del empleado y otras que responden a actuaciones del patrono respecto a la administración del negocio y a razones de naturaleza económica. ***Reyes Sánchez v. Eaton Electrical,*** *supra*, pág. 598. Estas razones atribuibles a decisiones del patrono, de ordinario, no son imputables al empleado, pero resultan de tal magnitud que su despido es prácticamente inevitable dentro de las normas que rigen el manejo de negocios. Íd., citando al Informe Conjunto de las Comisiones de Trabajo y Derechos Civiles y Servicio Público, P. de la C. 1112, 23 de abril de 1975, pág. 3.

Mientras tanto, el Art. 3 de la Ley Núm. 80-1976, *supra* sec. 185c, les impone a los patronos la obligación de retener a los empleados de más antigüedad en caso de cierre total, parcial o temporero de las operaciones de un establecimiento, "siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos".

Igualmente, el Art. 3-A de la Ley Núm. 80-1976, *supra*, crea una norma general en cuanto a la selección de empleados identificados bajo la obligación de retención de obreros de más antigüedad cuando el patrono opera varias oficinas, fábricas o sucursales en Puerto Rico. A esos efectos, dispone que, en casos como el cierre total de las operaciones de un establecimiento, los criterios de selección identificados en el Art. 3 de la referida Ley se aplicarán únicamente dentro del establecimiento físico impactado por la reducción de personal. A la misma vez, también establece la siguiente excepción:

> [...] cuando durante el año inmediatamente previo: (1) los empleados de las clasificaciones ocupacionales afectadas usual y frecuentemente se trasladaban de un establecimiento a otro; y (2) los empleados estaban bajo supervisión directa común en la administración diaria del personal, se deberá comparar a los empleados de los establecimientos así integrados. El hecho de que los empleados participaban de beneficios comunes o estaban

regidos por normas o reglas comunes, no será pertinente para la aplicación del método de selección establecido en este Artículo. Además, en las situaciones en que aplique dicho criterio por excepción, el criterio se utilizará únicamente con respecto a las clasificaciones ocupacionales y los establecimientos donde estén presentes dichas características de operación integrada. Íd.

Analizado el Art. 3 de la Ley Núm. 80-1976, *supra*, queda claro que se obliga al patrono a respetar un orden de retención preferente cuando deciden cerrar un establecimiento, si aplican ciertos elementos. El primero de ellos: que subsistan puestos que puedan ser desempeñados por el empleado de mayor antigüedad, los cuales estén vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de la misma clasificación ocupacional. Íd. El segundo de ellos: que, al momento del despido o la nueva contratación, no exista una diferencia razonablemente clara a favor de la capacidad, productividad, desempeño, competencia, eficiencia o historial de conducta de los empleados comparados, en cuyo caso el patrono podrá seleccionar usando esos criterios. Íd.

Igualmente, como surge del Art. 3-A de la Ley Núm. 80-1976, *supra*, se limita la aplicación de estas normas de retención al establecimiento impactado por el cierre, a menos que opere, como excepción, la integración de establecimientos. Así, se deberá comparar a los empleados del establecimiento afectado con aquellos de la localidad integrada si dentro del año inmediatamente previo al cierre: (1) los empleados de las clasificaciones ocupacionales afectadas se trasladaban de un establecimiento a otro usual y frecuentemente; y (2) si los empleados estaban bajo supervisión directa común en la administración diaria del personal. Íd. Al considerar estos criterios, el referido artículo excluye el hecho de si los empleados participaban de beneficios comunes o eran regidos por normas o reglas comunes. Íd. Asimismo, delimita aún más la aplicación del criterio a únicamente las clasificaciones

ocupacionales y los establecimientos que operan integradamente. Íd.

Para poner en marcha jurídica las protecciones antes descritas, el Art. 11 de la Ley Núm. 80-1976, *supra* sec. 185k, pauta lo siguiente:

(a) En todo pleito fundado exclusivamente en esta Ley, el tribunal celebrará una conferencia no más tarde de sesenta (60) días después de presentarse la contestación a la demanda o querella, a la cual las partes vendrán obligadas a comparecer o ser representados por una persona autorizada a tomar decisiones, incluyendo la transacción de la reclamación. Durante dicha vista se examinarán las alegaciones de las partes, se identificarán las controversias esenciales y se discutirán las posibilidades de una transacción inmediata de la reclamación. De no transigirse la reclamación, el tribunal ordenará el descubrimiento que quede pendiente y expeditará el señalamiento de fecha para celebrar la conferencia con antelación al juicio.

(b) En todo pleito fundado en esta ley, el tribunal celebrará una conferencia con anterioridad al juicio no más tarde de treinta (30) días después de contestada la demanda. Terminada dicha conferencia, si en su criterio hubiere razones suficientes, más allá de las circunstancias de existir alegaciones conflictivas para creer que su despido fue sin justa causa, dictará una orden para que en término improrrogable de quince (15) días, el patrono demandado deposite en la secretaría del tribunal una suma equivalente a la compensación total a la cual tendría derecho el empleado, y además, una cantidad para honorarios de abogado que nunca será menor del quince por ciento (15%) del total de la compensación o cien dólares ($100), la que fuere mayor. El patrono demandado podrá prestar una fianza adecuada para cubrir estas cantidades. Dichas cantidades o dicha fianza le serán devueltas al patrono si se dictare sentencia final y firme en su favor. En cualquier etapa de los procedimientos, en que, a petición de parte, el tribunal determine que existe grave riesgo de que el patrono carezca de bienes suficientes para satisfacer la sentencia que pueda dictarse en su día en el caso, el tribunal podrá exigir el depósito antes indicado o la correspondiente fianza.

El lenguaje vigente de este artículo fue establecido por la Ley Núm. 4-2017, *supra*, y se ha interpretado que alteró una de las características procesales primordiales de la Ley Núm. 80-1976 hasta ese momento: el esquema probatorio de inversión del orden de la prueba a favor del exempleado. ***Ortiz Ortiz v. Medtronic,*** supra. Bajo el esquema anterior, se invertía el orden de la prueba en casos civiles y se le imponía al patrono el deber de probar, al

comienzo, que el despido fue justificado. ***Romero et als. v. Cabrer Roig et als.,*** supra, pág. 652. En específico, se requería que, para quedar eximido de indemnizar al exempleado, el patrono alegara en la contestación a la demanda aquellos hechos que dieron origen la despido, así como probar que estuvo justificado. Íd. No obstante, para que operara la presunción, también se requería que el demandante estableciera los hechos básicos: que fue empleado, que estaba contratado por tiempo indeterminado, que recibía remuneración y que fue despedido. ***Ortiz Ortiz v. Medtronic,*** supra, pág. 775, citando a ***Rivera Figueroa v. The Fuller Brush Co.,*** 180 DPR 894, 907 (2011).

Ante la eliminación del lenguaje que le imponía el peso de la prueba al patrono, en los casos surgidos a partir de la Ley Núm. 4-2017, *supra*, no impera la inversión del peso de la prueba y, como de ordinario en los casos civiles, le compete al exempleado demostrar su causa de acción; esto es, que el despido fue injustificado. Íd., pág. 776, citando a E. García García, <u>El legado e implicaciones de la reforma laboral de 2017</u>, 86 Rev. Jur. UPR 1087, 1157 (2017).

Por último, aunque se trata de una *Sentencia* emitida por el Tribunal Supremo, consideramos el caso ***Delia Medina Medina y otros v. Walmart Puerto Rico, Inc. y otros,*** CC-2020-637 (Sentencia), por presentar hechos y controversias idénticas al caso y por su importante valor persuasivo. En esa ocasión, nuestro más alto foro resolvió que procedía la desestimación de una reclamación sobre despido injustificado y discrimen por edad presentada por diecisiete (17) exempleados de Walmart, quienes fueron despedidos después del cierre del Sam's Club, ubicado en Rexville, Bayamón. Al igual que en este caso, el patrono adujo que existió justa causa para el despido, toda vez que la localidad cerró totalmente. Asimismo, los exempleados plantearon, entre otros asuntos, que aplicaba la

obligación de retención del patrono según la antigüedad de los empleados, tomando en consideración la de trabajadores en otras tiendas debido a que eran operadas de forma integrada. Empero, nuestro más alto foro resolvió que el despido fue justificado porque la tienda cerró total y permanentemente y, además, que el patrono tampoco tenía obligación de reubicar a los empleados, según los Arts. 3 y 3-A de la Ley Núm. 80-1976, *supra*, porque el establecimiento operaba con independencia de los demás manejados por Walmart.

**E.**

Por su pertinencia, amerita profundizar en el análisis sobre la retroactividad de las enmiendas efectuadas por la Ley Núm. 4-2017, *supra*.

En ***Ortiz Ortiz v. Medtronic,*** supra, nuestro Tribunal Supremo tuvo la oportunidad de examinar el efecto retroactivo del Art. 4.12 de la Ley Núm. 4-2017, *supra*, en cuanto estableció el vigente inciso (a) del Art. 11 de la Ley Núm. 80-1976, *supra*, y eliminó el lenguaje referente a la inversión del peso de la prueba. A su entender, "[l]uego de analizar minuciosamente las disposiciones estatutarias pertinentes, la intención legislativa y el principio jurídico de la irretroactividad de las leyes, coincidimos en este asunto con la aplicación efectuada por el tribunal apelativo intermedio, pues <u>la disposición enmendada no es de aplicación retroactiva</u>". ***Ortiz Ortiz v. Medtronic,*** supra, pág. 781. (Subrayado nuestro). Por ello, <u>la disposición aplicable es aquella vigente al momento de los hechos que dieron lugar a la causa de acción por despido injustificado</u>. Íd. Es decir, el derecho vigente al momento del despido. En consecuencia, en ***Ortiz Ortiz v. Medtronic,*** supra, como el exempleado fue contratado el 5 de agosto de 2002 y despedido el 3 de marzo de 2016 y, como la Ley Núm. 4-2017, *supra*, entró en vigor el 26 de enero de 2017, inmediatamente después de

su aprobación, nuestro más alto foro resolvió que aplicaba el esquema establecido antes de su vigencia. Íd.[26]

Y es que, generalmente, en nuestra jurisdicción impera una norma de que las leyes no tendrán efecto retroactivo, a menos que se disponga expresamente lo contrario. Íd., pág. 777. A su vez, el efecto retroactivo no podrá perjudicar derechos adquiridos bajo el palio de una ley anterior. Íd. Por ello, la irretroactividad de las leyes representa un postulado jurídico fundamental en la interpretación estatutaria, el cual cede frente a particulares e importantes circunstancias según establecido concretamente por la Asamblea Legislativa. Íd.; ***Nieves Cruz v. U.P.R.,*** 151 DPR 150, 158 (2000). Aun así, se ha reconocido que una ley podrá ser retroactiva si surge de la intención legislativa, expresa o tácitamente, el deseo de darle ese efecto. Íd., citando a ***Rivera Padilla et al. v. OAT,*** 189 DPR 315, 340 (2013). Carente esa intención, la ley aplicable es aquella vigente al momento de los hechos que dan lugar a la causa de acción. Íd., citando a ***Nieves Cruz v. UPR,*** 151 DPR 150, 159 (2000).

## IV.

En esta ocasión tenemos la oportunidad de determinar si procede la desestimación sumaria de un pleito sobre despido injustificado promovido por un grupo de exempleados cuando el establecimiento en el que laboraban fue cerrado total y permanentemente por el patrono. En esa encomienda, nos corresponde interpretar si se demostró justa causa para los despidos y si era necesario que el patrono retuviera a los empleados

---

[26] Cabe destacar que, nuestro más alto foro, expresamente resolvió "el tribunal apelativo no erró en su análisis al resolver que el peso de la prueba recaía sobre el patrono según el esquema estatutario vigente al momento de su despido". ***Ortiz Ortiz v. Medtronic,*** supra. Así, utilizó como punto de partida el despido, toda vez que la causa de acción de despido injustificado surge al momento de la cesantía, no de la contratación del empleado, ni de la presentación de la *Querella* o *Demanda.* Esto último quedó claro en la siguiente expresión de nuestro más alto foro: "[e]l hecho de que la *Querella* del señor Ortiz Ortiz se presentara en el tribunal de instancia luego de la vigencia de la Ley Núm. 4 en nada altera este resultado". Íd.

según su antigüedad, comparándoles con aquellos de otros establecimientos.

Para los apelantes, no procede la desestimación porque a Walmart le correspondía el peso de la prueba de demostrar que hubo justa causa para los despidos, pero no lo hizo. A su entender, la parte apelada tampoco presentó prueba admisible en apoyo a su solicitud de sentencia sumaria y, por ello, el foro primario debió descartar tanto la declaración jurada en la que se basó, como uno de los documentos presentados para justificar el cierre de Sam's Club Colobos. Afirmativamente, alegan que uno de los documentos sometidos por Walmart evidencia que la tienda tuvo un desempeño de ventas positivo previo al cierre y que la compañía se proponía transferir su volumen de ventas a otras localidades. Igualmente, reiteran que la parte apelada tenía la obligación de reubicarlos. Por último, argumentan que el foro primario erró al interpretar que la *Oposición a la moción de sentencia sumaria* era una enmienda impermisible de la demanda y, de serlo, debió permitirla.

Para Walmart, nada impedía la desestimación sumaria del pleito y se demostró que existió justa causa porque el establecimiento fue cerrado total y permanentemente. A su vez, arguye que su solicitud de sentencia sumaria fue sustentada debidamente, mediante prueba admisible. Al igual, plantea que no se estableció que procediera la reubicación de los apelantes por aplicación de la excepción de establecimientos integrados. Por último, aduce que, en todo caso, los apelantes renunciaron a cualquier planteamiento sobre la operación integrada de los establecimientos y la aplicación retroactiva de la Ley Núm. 4-2017, *supra*, al levantarlo por primera vez en su *Oposición a moción de sentencia sumaria.*

Tras un análisis objetivo, sereno y cuidadoso de todos los documentos que obran en el voluminoso expediente ante nos y los

planteamientos de las partes, en correcta práctica adjudicativa apelativa, resolvemos que el TPI no incidió en los errores señalados. Independientemente a quién le correspondiera probar justa causa o su ausencia en primer lugar, de un examen sosegado del expediente se desprende diáfanamente que existió justa causa para el despido de los apelantes: el cierre total de las operaciones del establecimiento, en conformidad con el inciso (d) del Art. 2 de la Ley Núm. 80-1976, *supra*. Ello quedó establecido, sin que los apelantes lo refutaran, sustentado por los documentos que acompañaron la moción de sentencia sumaria y, sobre todo, por los hechos admitidos por ambas partes. La única forma que los apelantes tenían para evitar esa conclusión era indicando qué declaración jurada u otra prueba admisible demostraba que Sam's Club Colobos no se cerró total y permanentemente. No lo hicieron. Asimismo, tampoco demostraron que fuera de aplicación la obligación de retención de los empleados según su antigüedad, puesto que Sam's Club Colobos fue cerrado totalmente y no probaron que fuera operado de forma integrada con algún otro establecimiento. Únicamente adujeron especulaciones y meras generalidades sobre reglas comunes que aplicaban a los empleados o tareas asignadas con relación a otras localidades. Por esas razones, procede confirmar la *Sentencia* apelada.

Como cuestión de umbral, nos compete precisar qué disposiciones de la Ley Núm. 80-1976, *supra*, aplican al caso, si el esquema anterior a la Ley Núm. 4-2017, *supra*, o las disposiciones vigentes, establecidas en este último estatuto. Dicha tarea está guiada por un análisis del momento de los hechos que dan lugar a la causa de acción. ***Ortiz Ortiz v. Medtronic,*** supra; ***Nieves Cruz v. UPR,*** supra. En este caso, todos los exempleados despedidos por Walmart fueron contratados previo al 26 de enero de 2017, notificados del cierre de Sam's Club Colobos el 19 de julio de 2017

y <u>despedidos el 13 de octubre de 2017</u>. Así, su posible causa de acción por despido injustificado con posterioridad a la entrada en vigor de la Ley Núm. 4-2017, *supra,* y con ella del texto vigente de la Ley Núm. 80-1976, *supra.* Por esa razón, a este caso le aplican las disposiciones actuales establecidas en la Ley Núm. 80-1976, *supra,* a saber: (1) la lista no taxativa de razones que se entenderán como justa causa, dispuesta en el Art. 2; (2) el cierre total de las operaciones del establecimiento como justa causa, incluido en dicha lista; (3) la obligación del patrono de retener empleados de más antigüedad cuando se cumplen ciertos elementos, estatuida en el Art. 3; (4) la norma general que limita la selección de empleados a ser retenidos al establecimiento impactado, así como la excepción que permite expandir la evaluación a empleados de otras localidades en caso de operaciones integradas y los requisitos para su aplicación, según regulado en el Art. 3-A; y (5) el esquema procesal delineado en el Art. 11. De ahí que, como se discutió en el párrafo precedente, el cierre total y permanente de Sam's Club Colobos fuera suficiente justa causa para el despido de los apelantes. De ahí también que el esquema de inversión del peso de la prueba que establecía la Ley Núm. 80-1976 antes de la aprobación de la Ley Núm. 4-2017, *supra,* – el cual, según ***Ortiz Ortiz v. Medtronic,*** supra, fue eliminado – no aplique en el pleito de epígrafe. De ahí que los apelantes tuviesen que justificar la obligación de retención de Walmart. En fin, a los apelantes les correspondía litigar su causa de acción bajo la actual y vigente Ley Núm. 80-1976, *supra.*

En contraposición a esa interpretación, los apelantes se basan incorrectamente en ***Ortiz Ortiz v. Medtronic,*** supra, para argüir que Walmart tenía tanto el peso de la prueba de demostrar justa causa para los despidos, como la obligación de reubicarlos según su antigüedad en otras tiendas de la empresa. Esa teoría es errónea, pues parte de una lectura incorrecta de la jurisprudencia. Un

análisis de ***Ortiz Ortiz v. Medtronic,*** supra, y de ***González Santiago v. Baxter Healthcare,*** supra, demuestra que el Tribunal Supremo utiliza el momento del despido, no de la contratación del empleado, como punto de partida para determinar el estado de derecho vigente y aplicable al caso. En ***Ortiz Ortiz v. Medtronic,*** supra, fue claro: la disposición aplicable es aquella vigente al momento de los hechos que dieron lugar a la causa de acción por despido injustificado; es decir, el derecho vigente al momento del despido, no de la contratación. Como mencionamos, los apelantes fueron despedidos luego del 26 de enero de 2017 y, por eso, es aplicable la Ley Núm. 80-1976, *supra*, según enmendada por la Ley Núm. 4-2017, *supra*.

El anterior análisis es suficiente, por sí solo, para adjudicar la controversia presentada y disponer del recurso. No obstante, resulta imperativo atender el resto de los planteamientos de los apelantes, los cuales carecen de base fáctica y jurídica.

En primer lugar, en un intento de refutar las determinaciones de hechos incontrovertidos formuladas por el TPI, los apelantes argumentan que la declaración jurada de la señora Fernández Román debía ser descartada porque la declarante tenía un interés claro en el litigio y sus expresiones eran prueba de referencia inadmisible. En la declaración jurada, la señora Fernández Román expresó que, como gerente de Recursos Humanos, estuvo encargada del cierre del Sam's Club Colobos, que la tienda operaba de forma independiente en términos de personal, que Walmart tenía una política específica sobre traslados y que las labores que una empleada adscrita a una tienda realizara en otra no implicaban una transferencia de personal entre una localidad y otra. Todo ello está basado en el conocimiento personal de la declarante, quien con sus expresiones comprueba que está cualificada para declarar en cuanto a su contenido, tal y como permiten y requieren las Reglas

36.1 y 36.5 de Procedimiento Civil, *supra*. Es decir, sus expresiones parten del conocimiento personal que tiene como empleada gerencial de Walmart y según su experiencia trabajando el cierre del Sam's Club Colobos. Además, un examen de la declaración jurada no arroja indicio alguno de prueba de referencia. Prueba de referencia "[e]s una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Regla 801 de Evidencia, 32 LPRA Ap. IV, R. 801. Toda la información recogida en la declaración jurada surge de expresiones de la señora Fernández Román, quien es la declarante, en todo caso. No se trata de una expresión que hace otra persona y que se ofrece para probar la verdad de lo expresado.

A su vez, los apelantes obvian que la Regla 36.1 de Procedimiento Civil, *supra*, permite la presentación de declaraciones juradas para establecer los hechos sobre los que no hay controversia, mientras que la Regla 36.5 de Procedimiento Civil, *supra*, requiere que las declaraciones juradas estén basadas en el conocimiento personal del declarante y contengan que está cualificado para testificar. De esta forma, el vínculo personal de la señora Fernández Román con el pleito – mínimo en este caso, más allá de su conocimiento personal – no es determinante, por sí solo, para descartar la declaración jurada. De lo contrario, ni Walmart, ni los apelantes podrían someter declaraciones juradas en apoyo de sus planteamientos por el posible vínculo que el declarante tenga con el pleito. Cabe recordar que la inmensa mayoría de los hechos aducidos por los apelantes sobre el tiempo de contratación, las funciones y la última posición ocupada por los empleados fueron sometidos por declaraciones juradas de dichos empleados, quienes son parte en el pleito.

De la misma forma, los apelantes articulan que las determinaciones del TPI se fundamentaron erróneamente en el *Club*

*Closure Tool Kit*[27], un documento que describen como mutilado, incompleto con porciones ennegrecidas y en blanco, cuya confidencialidad no fue justificada y que podría contener un flujograma que ataba contractualmente a Walmart al momento de despedir a los empleados. De una lectura de la *Sentencia* apelada se desprende claramente que el foro primario no hizo referencia alguna a dicho documento, el cual figuraba como Anejo 32 de la *Moción de sentencia sumaria*. Para ser precisos, las determinaciones de hechos 11, 12, 13 y 15 que establecen el cierre total y permanente de Sam's Club Colobos se basaron e hicieron referencia a la declaración jurada de la señora Fernández Román, la *Querella*, la *Contestación a querella*, la *Moción de sentencia sumaria* y la *Oposición a moción de sentencia sumaria*. La información que aporta el *Club Closure Toolkit* versa sobre instrucciones para efectuar el cierre del Sam's Club Colobos a la persona encargada de esa tarea. Entretanto, el *Club 4806 Carolina (E), PR, Closing Analysis* ofrece una evaluación sobre las ventas y razones de negocios para el cierre del Sam's Club Colobos. Analizado el derecho vigente, la información ofrecida por ambos documentos es inmaterial e impertinente a la determinación de que el cierre de Sam's Club Colobos fue total y la eliminación de las clasificaciones ocupacionales fue permanente. La especulación de los apelantes sobre el posible contenido del *Club Closure Toolkit* a los efectos de que delineaba un esquema contractual que Walmart estaba obligado a respetar no es suficiente para controvertir lo determinado por el TPI, lo cual tampoco se basó en esos documentos. La parte promovida por una solicitud de sentencia sumaria no puede descansar en meras especulaciones para derrotarla. **Nieves Díaz,** 178 DPR 820, 848-849 (2010).

---

[27] Anejo 32 de la *Moción de sentencia sumaria*. Sometido de forma confidencial por la parte apelada.

Adviértase que los apelantes aducen que el *Club Closure Toolkit* demuestra que Sam's Club Colobos tuvo un desempeño positivo en su último segmento operativo y que Walmart preveía transferir el volumen de ventas de la tienda a otros Sam's Club. Para ellos, eso refuta las justificaciones de Walmart para el cierre total del establecimiento y fortalece el argumento de que la parte apelada no logró probar que existiera una condición económica adversa en la empresa o una reducción en producción, ventas o ganancias. No obstante, ese no es el estándar vigente y aplicable a este caso para determinar si existió justa causa. De un repaso de la Ley Núm. 80-1976, *supra*, surge claramente que el cierre total del establecimiento constituye justa causa para el despido de los empleados que allí laboran, independientemente de la razón de negocios que motive la acción de cierre. Y es que lo contrario implicaría dirimir si las decisiones de negocios propias de Walmart fueron justificadas financieramente, aspecto que está fuera de la consideración del tribunal, además de no ser requerido por el estatuto y la jurisprudencia. Para demostrar justa causa para el despido de los apelantes no era necesario probar la existencia de una condición económica adversa en la empresa, ni cambios tecnológicos que afectaran las operaciones, ni que fuera necesario para el buen funcionamiento de la empresa, ni una reducción en ventas.

Por último, los apelantes esbozan que el TPI erró al interpretar que la *Oposición a la moción de sentencia sumaria* intentó enmendar de forma impermisible la *Querella*. En su lugar, arguyen que se debió permitir la enmienda porque el foro primario tenía discreción para ello. Sin embargo, no les asiste la razón.

Según matizó el ilustrado foro recurrido, los apelantes plantearon por primera vez, en la *Oposición a la moción de sentencia sumaria*, que: (1) las enmiendas de la Ley Núm. 4-2017, *supra*, no aplicaban al caso y (2) que debía aplicarse el Art. 3-A de la Ley Núm.

80-1976, *supra*, introducido por el Art. 4.6 de la Ley Núm. 4-2017, *supra*. De hecho, el foro primario resaltó que la *Querella* tampoco alegó qué localidad de Walmart estaba integrada con Sam's Club Colobos. Por ello, resolvió que permitir estos planteamientos constituiría una enmienda impermisible de la *Querella*. Aún así, también concluyó correctamente que: la Ley Núm. 80-1976, *supra*, aplicaba según enmendada por la Ley Núm. 4-2017, *supra*, y que los apelantes no presentaron evidencia para sostener que aplicara la referida excepción.

Si bien la práctica general en el contexto de enmiendas a las alegaciones es que se favorece su autorización, ha sido reiterado que no es posible enmendar las alegaciones mediante una moción de sentencia sumaria. ***Mayagüez Hilton Corp. v. Betancourt,*** supra; Cuevas Segarra, *op. cit*. En todo caso, una evaluación de los criterios discrecionales para permitir enmiendas a las alegaciones tampoco justifica su autorización en este pleito. La adición de los planteamientos aducidos por los apelantes no se trata de un mero cambio en las alegaciones. Por el contrario, altera sustancialmente el alcance del caso al añadir posibles elementos, tales como la operación integrada de establecimientos. Además, tergiversa el derecho que los apelantes reclaman que les favorece, toda vez que, por un lado, plantean que les aplican las disposiciones de la Ley Núm. 80-1976, *supra*, antes de que fuera enmendada y, por el otro, solicitan que se les apliquen las enmiendas introducidas por la Ley Núm. 4-2017, *supra*. Así, el TPI no erró al descartar los argumentos traídos por los apelantes por primera vez. Incluso tomando en consideración los planteamientos de hechos y de derecho traídos por primera vez en la *Oposición a la moción de sentencia sumaria,* los apelantes no presentaron evidencia para controvertir los hechos materiales de este caso, ni para establecer que les aplicara el beneficio reglamentado por los Arts. 3 y 3-A de la Ley Núm. 80-1976,

*supra.* Es decir, independientemente de que tomemos en consideración los argumentos traídos por primera vez por los apelantes, existió justa causa para el despido y no se demostró que los establecimientos fueran operados de forma integrada de manera que se obligue a Walmart a retener a los apelantes según su antigüedad en comparación con empleados de otras localidades.

Sobre el beneficio reglamentado en los Arts. 3 y 3-A de la Ley Núm. 80-1976, *supra,* los apelantes arguyen que Walmart tenía la obligación de retener a los exempleados de más antigüedad y comparar su tiempo en la empresa con la de empleados en otros establecimientos operados integradamente. Por su parte, Walmart argumenta que no se cumplió con ninguno de los criterios requeridos para aplicar la obligación y, sobre todo, para requerir que Walmart comparara a los apelantes con empleados en otros Sam's Club.

Según se examinó en la Parte III de esta *Sentencia,* el Art. 3 de la Ley Núm. 80-1976, *supra,* les impone a los patronos la obligación de retener empleados de más antigüedad cuando el despido se deba a: (1) un cierre total, temporero o parcial de las operaciones; (2) cambios tecnológicos o de reorganización, entre otros; (3) reducciones en el volumen de producción, ventas o ganancias; o (4) al propósito de aumentar la competitividad o productividad.[28] Sin embargo, la obligación solo estará presente cuando subsistan puestos vacantes u ocupados por empleados de menor antigüedad dentro de su misma clasificación ocupacional.

Tras el cierre total de Sam's Club Colobos, no subsistieron puestos vacantes u ocupados por empleados con menor antigüedad dentro de la misma clasificación ocupacional porque todos los puestos fueron eliminados con el cierre.

---

[28] Nótese que estas son las instancias que el Art. 2 de la Ley Núm. 80-1976, *supra,* enumera como justa causa en sus incisos (d), (e) y (f).

Pese a ello, los apelantes aducen que se les debe aplicar la excepción a la norma de que la referida obligación de retención se limitará al establecimiento físico impactado por la reducción de personal, según establecida en el Art. 3-A de la Ley Núm. 80-1976, *supra*. Ese artículo, acuñado por la Ley Núm. 4-2017, *supra*, requiere que el patrono compare la antigüedad en el empleo de los afectados con la de aquellos empleados de otros establecimientos operados integradamente. Según establece, esta excepción opera únicamente cuando, en el año inmediatamente previo al despido: (1) los empleados de las clasificaciones ocupacionales afectadas usual y frecuentemente se trasladaban de un establecimiento a otro; y (2) los empleados estaban bajo supervisión directa común en la administración diaria del personal. A esto, el estatuto añade que será impertinente el que los empleados participaran de beneficios comunes o fueran regidos por normas o reglas comunes. Ahora bien, ni en su *Oposición a sentencia sumaria*, ni en la *Apelación* de epígrafe, los apelantes aducen qué evidencia existe para demostrar que se cumplían los dos (2) requisitos requeridos por el Art. 3-A de la Ley Núm. 80-1976, *supra*. Es decir, no señalan qué empleados dentro de su misma clasificación ocupacional fue trasladado de un establecimiento a otro durante el año precedente al despido. Tampoco indicaron qué otro establecimiento fue operado integradamente con Sam's Club Colobos.

Por el contrario, se limitan a plantear que Sam's Club Colobos era operado integradamente con algún otro establecimiento porque: (1) la señora Fernández Román estuvo encargada de la coordinación del cierre de Sam's Club Colobos mientras se desempeñaba como gerente de Recursos Humanos en Sam's Club Plaza Escorial; (2) la señora Del Valle realizó labores de auditoría mientras se desempeñaba como Líder de Equipo de UPC adscrita a Sam's Club Colobos; (3) la señora Del Valle se reportaba a las oficinas centrales

de Walmart; (4) la *Política de Transferencias y Publicación de Puestos* aplicaba de forma común a los empleados; y (5) en su aplicación, la referida política de traslados no era inflexible. Empero, las labores realizadas en otras tiendas por la señora Fernández Román, quien no es parte en este pleito, y por la señora Del Valle fueron incidentales y no implicaron transferencias de personal que sugieran que los empleados de Sam's Club Colobos estaban bajo supervisión directa común en la administración diaria del personal. Igualmente, los apelantes tampoco aportan prueba para demostrar que la política de traslados era flexible o que Walmart trasladaba indiscriminadamente a sus empleados de una tienda a otra. Además, tal y como establece el Art. 3-A de la Ley Núm. 80-1976, *supra*, resulta impertinente que Walmart tuviese una política con normas o reglas comunes que rigieran a los empleados.

Por todo lo anterior, corresponde confirmar la *Sentencia* apelada, al ser conforme a derecho, puesto que el foro primario no erró al emitir el dictamen, y se demostró que existía justa causa para el despido de los apelantes.

**V.**

Por los fundamentos anteriormente esbozados, se *confirma* la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones. El Juez Sánchez Ramos concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones